UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVID CADIEUX,                          )
                                        )
          Movant,                       )
                                        )
v.                                      ) Civil No. 09-42-B-W
                                        ) Crim. No. 03-41-B-W
UNITED STATES OF AMERICA,               )
                                        )
          Respondent                    )

**RECOMMENDED DECISION ON A 28 U.S.C. § 2255 MOTION**

David Cadieux seeks 28 U.S.C. § 2255 relief from his federal conviction and sentence as a felon in possession of a firearm.  Cadieux received a 188-month sentence after this Court determined that he met the Armed Career Criminal Act (ACCA) criteria.  The First Circuit affirmed on direct appeal.  See United States v. Cadieux, 500 F.3d 37 (1st Cir. 2007).  In this § 2255 motion Cadieux presents two grounds. His first claim is that his ACCA predicate offense of breaking and entering is not a crime of violence as it was a commercial establishment.  For this ground he relies on United States v. Giggey, 551 F.3d 27 (1st Cir. 2008) (en banc). Cadieux's second claim is that his 1983 conviction for indecent assault was not a crime of violence under U.S.S.G. § 4B1.1, here relying on United States v. Herrick, 545 F.3d 53 (2008).

The United States has filed a memorandum in opposition and Cadieux has filed a brief reply. For the reasons below, I recommend that the Court deny Cadieux § 2255 relief.

**DISCUSSION**

Both of Cadieux's grounds are frontal attacks on his sentence and are the type of claims that are usually first and finally addressed in the context of a direct appeal.  See United States v. Frady, 456 U.S. 152, 166-68 (1982); Singleton v. United States, 26 F.3d 233, 239 (1st Cir. 1994).

**A.** **Ground 1- United States v. Giggey, 551 F.3d 27 (1st Cir. 2008)**

In his first 28 U.S.C. § 2255 ground Cadieux questions the use of a 1980 conviction for breaking and entering in Massachusetts (as one of the three ACCA offenses) in the wake of the First Circuit's United States v. Giggey, 551 F.3d 27 (1st Cir. 2008). This conviction is reflected in Paragraph 25 of the Pre-sentence Investigation Report (PSI). This PSI paragraph represents: "Court records indicate that the defendant was found guilty of breaking and entering a building of Robert Delaney and Edward L'Italien." (PSI § 31.)  In his reply Cadieux states that he truly believes that Giggey "will if not today will someday chang[e] the way burglary is to be defined as to the ACCA status." (Reply Mem. at 1.)

Even assuming that Giggey is directly applicable to Cadieux's claim and he had preserved the challenge through his direct appeal, he would not be entitled to the benefits of its holding because Giggey made it clear that the First Circuit does not intend it to have retroactive effect for cases on collateral review. As I explained in Thomas v. United States:

> [I]n Giggey the First Circuit expressly noted:
>> Our decision to change course affects only the procedure by which a district court calculates a defendant's sentence. It does not "prohibit criminal punishment for certain types of primary conduct" or "forbid the imposition of certain categories of punishment for a particular class of defendants" and so is not a retroactive substantive change in the law. Sepulveda v. United States, 330 F.3d 55, 59 (1st Cir.2003) (discussing the rule from Teague v. Lane, 489 U.S. 288 (1989)). It also is not a "watershed" change in the law any more than United States v. Booker, 543 U.S. 220 (2005), which we held non-retroactive. Cirilo-Munoz v. United States, 404 F.3d 527, 532-33 (1st Cir.2005).
>
> 551 F.3d at 36 n. 3. Clearly, Thomas's direct appeal has become final and the First Circuit has already made it clear to District Courts that its "reverse course" holding does not apply retroactively to cases on collateral review. This conclusion binds this court even though Thomas fully preserved this claim from the time of his sentencing through his direct appeal and his legal argument has been vindicated by Giggey.

Civ. No. 9-58-P-S, Crim. No. 4-67-P-S,  2009 WL 1149615, 3 -4  (D. Me. Apr. 28, 2009).   I

further note, with respect to Cadieux's challenge to this prior conviction, it is of no small

moment that Cadieux conceded --through the litigation of his direct appeal --that this conviction

qualified as a violent felony for ACCA purposes. See Cadieux, 500 F.3d at 42.

 With regards to Cadieux's aspiration that at least someday Giggey will change the way

burglary  is treated under the ACCA statute, there is a distinction of some significance with

respect to U.S.S.G. § 4B1.2 and a career offender sentence and the 18 U.S.C. § 924(e)(2)

determination.  Giggey addressed U.S.S.G. § 4B1.2(a)(2) which defines "crime of violence"

Career Offender predicate offense when the offense "is burglary of a dwelling, arson, or

extortion, involves use of explosives, or otherwise involves conduct that presents a serious

potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a)(2)(emphasis added).  The

predicate offense in Giggey was not a burglary of a dwelling so the key question was the residual

clause embracing crimes "that otherwise involves conduct that presents a serious potential risk of

physical injury to another."  551 F.3d at 38-41.

 Section 924(e)(2)(B)(ii), of the ACCA, on the other hand, encompasses an offense when

it  "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that

presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

Noticeably absent in this provision is the limitation on the use for ACCA purposes of burglaries

that involve dwellings.  And the First Circuit in Giggey went to some length to distinguish this

aspect of the Career Offender Guideline from the ACCA provision.  See 551 F.3d at 33 ("We

start by considering the text of § 4B1.2(a)'s second clause, which lists the enumerated offenses.

Had the Commission intended all non-residential burglaries to be per se crimes of violence, it

could have easily said so in the enumerated offenses, or referred to the definition contained in the

3

ACCA, see 18 U.S.C. § 924(e)(2)(B) ("[T]he term 'violent felony' means any crime ... that ... is burglary ...."), or used the term "generic burglary" and referred to Taylor.  But the Commission chose not to take any of these approaches."); id. at 36 ("Here, the Commission's listing of the more limited "burglary of a dwelling" instead of using the ACCA's broader term 'burglary' or even Taylor's 'generic burglary' affects the interpretation of the Guideline's 'otherwise' clause.").

The United States Supreme Court explained in Taylor v. United States that "the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." 495 U.S. 575, 598 (1990) (footnote and citations omitted).  It held "that an offense constitutes 'burglary' for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." Id. at  602.

The copy of the Massachusetts criminal records provided by Cadieux in support of this ground indicates that he was charged under Chapter 266, Section 16 of the Massachusetts General Laws for breaking and entering in the nighttime with the intent to commit a felony. (Doc. No. 1-3 at 3, 5.)   The statute cited with respect to Cadieux's breaking and entering conviction provides:

> Whoever, in the night time, breaks and enters a building, ship, vessel or vehicle, with intent to commit a felony, or who attempts to or does break, burn, blow up or otherwise injures or destroys a safe, vault or other depository of money, bonds or other valuables in any building, vehicle or place, with intent to commit a larceny or felony, whether he succeeds or fails in the perpetration of such larceny or felony, shall be punished by imprisonment in the state prison for not more than twenty years or in a jail or house of correction for not more than

two and one-half years.

Mass. Gen. Laws ch. 266, § 16.  The documents provided by Cadieux in support of this 28

U.S.C.§ 2255 motion include the complaint that represents that Cadieux: "Did break and enter in

the nighttime a building of Robert Delaney and Edward L'Italien in …Monson with the intent

therein to commit a felony."  (Doc. No. 1-3 at 3.)  Although these records are not crystal clear on

the question, Cadieux's attachment does indicate that a not guilty plea was entered and the PSI

represents that Cadieux was 'found' guilty.  Cadieux does not suggest that in the wake of the

adjudication of guilt there are no official records that are cognizable under Taylor and Shepard v.

United States, 544 U.S. 13 (2005) to document that the structure involved was a burglary of a

building --- as opposed to a ship, vessel or vehicle.  In fact, in trying to bring his case within the

ambit of Giggey, Cadieux stresses that it was a commercial property called the "Golden Plow."

The First Circuit's United States v. Bennett addressed an ACCA defendant's challenge to

his sentence on the grounds that his Rhode Island nighttime breaking and entry with the intent to

commit a larceny conviction did not qualify as a predicate offense.  469 F.3d 46, 48 -51 (1st Cir.

2006).  "At the plea colloquy, the state prosecutor stated that the government would be prepared

to prove at trial that the defendant 'entered a steel storage shed ... belonging to [another] with

intent to commit larceny in the nighttime.'".  Id. at 48.   The Bennett Panel explained:

> The definition of "violent felony" includes, inter alia, the crime of burglary, but
> the term "burglary" itself is not defined in the statute. Id. § 922(e)(2).
> The Supreme Court, however, addressed the meaning of burglary as used
> in the ACCA in Taylor v. United States, 495 U.S. 575 (1990). The Court first
> rejected both the view that the definition depends on the label adopted by the state
> of conviction and the idea that Congress meant to include only the common-law
> definition of burglary as "breaking and entering of a dwelling at night, with intent
> to commit a felony." Id. at 592. Rather, the Court concluded that
> > Congress meant by 'burglary' the generic sense in which the term is now
> > used in the criminal codes of most states. Although the exact formulations
> > vary, the generic, contemporary meaning of burglary contains at least the

5

following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.

Id. at 598. Thus, an offense qualifies as "burglary" for purposes of an ACCA sentencing enhancement if it "substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." Id. at 602.

In assessing whether a state conviction qualifies as generic burglary, a court should take a categorical approach, "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Id. at 600. When the state statute defines burglary more broadly than the generic definition, however, the court may then look to whether the jury was required to find all the elements of generic burglary. Id. at 602.

Defendant contends that his conviction for breaking and entering a steel storage shed does not meet the definition of generic burglary under Taylor, and therefore does not constitute a violent felony as determined by the district court, for two reasons: First, he argues that to qualify as a "building or other structure" under the Taylor definition, the building or structure must be "occupiable." Second, he argues for the first time on appeal that the statute under which he was convicted for the predicate offense did not include an "unlawful or unprivileged entry" element as required by Taylor.

Id. at 48-49.  The Court reasoned:

We begin our review with the Rhode Island statute under which Bennett was convicted for the predicate crime at issue, entitled "Breaking and entering other buildings with criminal intent-Railroad cars-Tractor trailers." R.I. Gen. Laws § 11-8-5. The first clause of the statute makes it unlawful to "break and enter or enter in the nighttime, with intent to commit [a crime] in it, any barn, stable, carriage house, or other building." Id. The second clause addresses the similar breaking and entering of railroad cars and tractor trailers. Id.

Because the statute defines burglary more broadly than Taylor did, including the breaking and entering of more than just buildings and structures, we look to the record before the court to determine under which clause Bennett was convicted. The transcript of the plea colloquy clearly shows that Bennett was convicted under the first clause of the statute, involving the burglary of "other buildings," and therefore we base our determination of whether the conviction qualifies as generic burglary on the elements required for conviction under the "other buildings" clause.

Bennett contends that to meet the Taylor definition of generic burglary, the structure involved in a predicate crime must be "occupiable," in the sense that it must be large enough to accommodate a person. …

…

Bennett was convicted of "entering" into a steel storage shed, and therefore we know that the structure was large enough to be entered by a person.

Thus this case does not raise any issue about structures not large enough to permit human entry.

469 F.3d at 49 -50.  Compare United States v. Peterson, 233 F.3d 101, 108 -09 (1st Cir. 2000); see also Giggey, 551 F.3d at 41 ("Neither the comparative degree of risk analysis nor the similarity in kind inquiry within the categorical approach will always lead to clear answers. It is quite possible that using the categorical analysis will turn on fine distinctions. See, e.g., Peterson, 233 F.3d at 108 (finding that a different section of Rhode Island's breaking and entering statute was not a 'violent felony' under the ACCA because, unlike burglary as defined in Taylor, the breaking and entering crime had no requirement that the defendant intended to commit a crime inside the structure, even though the structure was itself a dwelling place).").

Although there is no reason to reach this point in the context of this recommended decision, it is certainly not presently a foregone conclusion that the legal analysis surrounding the "otherwise" residual clause of  U.S.S.G. § 4B1.2(a)(2) discussed in Giggey could have no relevance to analyzing a conviction such as Cadieux's under the "otherwise clause" of § 924(e)(2)(B)(ii).   See United States v. Delgado, 288 F.3d 49 n. 5 (1st Cir. 2002);  see also James v. United States, 550 U.S. 192, 209 (2007) ("As long as an offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of § 924(e)(2)(B)(ii)'s residual provision. Attempted burglary under Florida law-as construed in Jones to require an overt act directed toward entry of a structure-satisfies this test.");  Peterson, 233 F.3d at 110 ("We do not suggest that no breaking and entering offense except one precisely meeting the Taylor definition of burglary could ever fall under § 924(e)(2)(B)(ii) through its 'otherwise' clause.")(citing Taylor, 495 U.S. at 600 n. 9).

7

**B.**     **Ground 2- <u>United States v. Herrick</u>, 545 F.3d 53 (1st Cir. 2008).**

Cadieux also claims that he is entitled to relief on the basis of the First Circuit's <u>United States v. Herrick</u>, 545 F.3d 53 (1st Cir. 2008) apropos his 1983 Massachusetts conviction for indecent assault of a minor, one of his other ACCA offenses reflected in Paragraph 29 of his PSI. Paragraph 29 of the PSI represents: "Court records indicate that the defendant was found guilty of committing an indecent assault and battery on [a] child under the age of fourteen as well as [another child] under the age of fourteen.  The defendant was represented by counsel."  (PSI ¶ 29.)

In his attachment in support of this 28 U.S.C. § 2255 ground, Cadieux opines:

> I believe this Herrick Decision may relate to my 1983 supposed predicate offense, as the Gov. showed virtually no evid[e]nce as to what the offense was, or w[e]re, or to whom, and th[e]y did not show any clear cases that were 13B from 1983 or f[u]rther back, th[e]y showed mostly [statutory] rapes and 13H from post 1983.  I believe every case is [unique] and should be judged on the fact if the case is so old th[e]y cannot find any of the facts then the case should be retired.

(Doc. No. 1-6 at 1.)

This Court has already addressed the 1983 conviction with regards to its qualification as an ACCA predicate offense:

> The statute under which Mr. Cadieux was convicted in 1983 read:
>> Whoever commits an indecent assault and battery on a child under the age of fourteen shall be punished by imprisonment in the state prison for not more than ten years, or by imprisonment in a jail or house of correction for not more than two and one-half years...
>
> Mass. Gen. Laws ch. 265, § 13B (1983). In 1983, § 13B had not yet been amended to provide that a child under the age of fourteen cannot consent to an indecent assault and battery. Thus, when Mr. Cadieux pleaded guilty to this crime in 1983, an absence of his victims' consent was an element of the crime. <u>Commonwealth v. Green</u>, 399 Mass. 565, 505 N.E.2d 886, 886 (1987) (As of June, 1984, lack of consent "was an element of the crime which the Commonwealth was required to prove in a prosecution for a violation of G.L., Ch.

8

265, § 13B."); <u>Commonwealth v. Burke</u>, 390 Mass. 480, 457 N.E.2d 622, 627 (1983); <u>Commonwealth v. Rowe</u>, 18 Mass.App.Ct. 926, 465 N.E.2d 1220, 1221 (1984).

       As of 1983, therefore, a violation of § 13B, Indecent Assault and Battery on Child Under Fourteen, had the same element of non-consent as a violation of § 13H, Indecent Assault and Battery on Person Over Fourteen. Mass. Gen. Laws Ch. 265, § 13H. <u>Maghsoudi v. INS</u>, 181 F.3d 8, 14-15 (1st Cir.1999) (lack of consent is an element of indecent assault on a person fourteen or older under § 13H). A violation of § 13H has been held to be a conviction of a "crime of violence." <u>Sutherland v. Reno</u>, 228 F.3d 171, 175-77 (2d Cir.2000); <u>United States v. Lepore</u>, 304 F.Supp.2d 183, 189 (D.Mass.2004); <u>Sango-Dema v. INS</u>, 122 F.Supp.2d 213, 219 (D.Mass.2000). Mr. Cadieux's argument on the 1983 conviction is based on the erroneous premise that the conviction should not count, because non-consent was not an element. In fact, non-consent was an element of § 13B in 1983 and under the rationale well-expressed in <u>Sutherland</u>, <u>Lepore</u>, and <u>Sango-Dema</u>, the 1983 conviction for violation of § 13B is a "violent felony" under § 924(e)(2)(B).

<u>United States v. Cadieux</u>, 350 F.Supp.2d 275, 279 (D. Me. 2004) (footnotes omitted).  The Court further noted: "The 1983 conviction alone might constitute two convictions under the ACCA. The complaints indicate that there were two victims under 14. Mr. Cadieux was convicted of three counts. The record is insufficient to determine whether these convictions were for crimes "committed on occasions different from one another" under 18 U.S.C. § 924(e)(1)." (<u>Id.</u> at 279 n.8 (citing <u>United States v. Riddle</u>, 47 F.3d 460 (1st Cir.1995)).

      Addressing Cadieux's claim regarding his PSI ¶ 31 offense (1989) for indecent assault and battery on a minor the First Circuit concluded that it did qualify under the § 924(e)(2)(B)(ii) definition of a  predicate.  After summarizing the holdings of <u>Taylor</u>, 495 U.S. 575, <u>Shepard</u>, 544 U.S. 13, and <u>James</u>, 550 U.S. 192, the First Circuit addressed Cadieux's Massachusetts conviction for indecent assault and battery. 500 F.3d at 42-47.  The Panel concluded that the offense did qualify as a violent felony under the 18 U.S.C. § 924(e)(2)(B)(ii) residual clause. <u>Id.</u>

at 47.[1]  As the United States points out, in challenging the 1983 conviction Cadieux has even a steeper hill to climb as the version of the statute applicable to the 1989 offense did not require the state to prove a want of consent on the part of the underage victim.

In Herrick: "The sole issue on appeal [was] whether the district court committed error by classifying Herrick's 1995 Wisconsin conviction for motor vehicle homicide ('vehicular homicide') as a 'crime of violence' pursuant to Guidelines section 4B1.2(a)." 545 F.3d at 56. Herrick addressed the implications of the United States Supreme Court's Begay v. United States, __ U.S. __, 128 S. Ct. 1581 (2008) wherein the Supreme Court reviewed a driving under the influence offense utilized by the prosecution for ACCA purposes.

Not only do I not see how either Herrick or Begay would have impacted Cadieux's ACCA status had they been decided prior to his sentencing, it seems inescapable that the same non-retroactivity analysis applicable to the Booker/Giggey decisions would apply to Herrick's holding.

---

[1]       Cadieux challenged the use of this 1989 conviction as a predicate offense in his direct appeal.  The First Circuit summarized:

On July 19, 2004, Cadieux entered into a plea agreement under Fed.R.Crim.P. 11(c)(1)(c). The agreement specified a base offense level 14 and criminal history category II, which resulted in an initial guidelines range of 12-18 months. At the change-of-plea hearing on September 2, 2004, probation informed the court that Cadieux was subject to a sentencing enhancement as an armed career criminal because Cadieux had three prior violent felony convictions. See 18 U.S.C. § 924(e)(1). Among other things, he argued that his 1989 conviction for indecent assault and battery on a minor did not qualify as a third strike because the 1989  statute captured consensual sexual touching that could not be deemed "violent" within the meaning of the ACCA. The presentence report, to which Cadieux did not object, stated that Cadieux was born on September 20, 1959. In a well-reasoned opinion, the court below found that "a comparison between the [1989] indictment and the elements of the statute as illuminated by applicable case law" established that Cadieux, as an adult, had committed an indecent sexual touching of a child which, under our precedent, was a violent felony under the ACCA. See United States v. Cadieux, 350 F.Supp.2d 275, 285 (D.Me.2004). The court permitted Cadieux to withdraw his plea, and the case went to trial.

Cadieux, 500 F.3d at 39 -40 (footnote omitted).  The First Circuit also noted: "Although Cadieux's age at the time of the crime was undisputed, the court did not consider it, despite the fact that it struck the court 'as equally artificial not to do so.'  Cadieux, 350 F.Supp.2d at 285 n. 14."  Id. at 40 n.3.

*Conclusion*

For the reasons set forth above, I recommend that the Court deny Cadieux 28 U.S.C. § 2255 relief.  I further recommend that a certificate of appealability should not issue in the event Cadieux files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

<u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 8, 2009                               /s/Margaret J. Kravchuk
                                          U.S. Magistrate Judge